HALL, APPELLANT, *v.* LAKEVIEW LOCAL SCHOOL
DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as *Hall v. Lakeview Local School Dist.
Bd. of Edn.* (1992), 63 Ohio St.3d 380.]

(No. 91–834—Submitted February 18, 1992—Decided April 15, 1992.)

*Lucas, Prendergast, Albright, Gibson & Newman, Robert J. Walter* and *Stephen H. Dodd,* for appellant.

*Christopher J. Shaker,* Assistant Prosecuting Attorney, for appellee.

DOUGLAS, J. The question presented for our consideration is whether the trial court and court of appeals erred in concluding that appellant was not entitled to the protections provided for in R.C. 3319.081 when the board decided to nonrenew appellant's contract as "Head Custodian." For the reasons that follow, we answer this question in the affirmative and, accordingly, reverse the judgment of the court of appeals.

Pursuant to R.C. 3319.081(A), a "[n]ewly hired regular nonteaching school employe[e] * * *" of a school district first receives a written contract of employment for a period not to exceed one year. If the nonteaching employee is rehired, then the employee is to be given a contract for a period of two years. After the expiration of the two-year contract, and if the contract of the employee is renewed by the school district, the employee " * * * shall be continued in employment * * *," and the salary for the employee may be increased but cannot be reduced unless the reduction is " * * * part of a uniform plan affecting the nonteaching employees of the entire district." R.C. 3319.081(B). Thereafter, if the board wishes to terminate, demote or suspend the employee who has gained continuing status, there must be cause

to do so. Further, the board must follow certain procedures when terminating, demoting or suspending such an employee. R.C. 3319.081(C).

Appellant contends that he was *promoted* by the board from the position of custodian to that of head custodian. Appellant points out that the position of head custodian is a separate and distinct position recognized in the collective bargaining agreement between the board and OAPSE. Appellant further contends that the action by the board in nonrenewing his contract as head custodian resulted in an illegal reduction in his wages. Appellant argues the reduction was not a " * * * uniform plan affecting the nonteaching employees of the entire district," and constituted an illegal *demotion* without cause and without compliance with the procedural requirements set forth in R.C. 3319.-081(C).

Challenging the appellant's contentions, the board maintains that it did not have the statutory authority to issue and enter into "supplemental" contracts with nonteaching employees and, for that reason, the supplemental contracts issued to appellant to "act as Head Custodian" were void *ab initio* and had no effect. In other words, the board posits that because it did not have the authority to enter into supplemental contracts with its nonteaching employees, appellant was never promoted and, consequently, could not have held the position of head custodian.

Boards of education, as creatures of statute, have no more authority than that conferred upon them by statute, or what is clearly implied therefrom. See, *e.g., Wolf v. Cuyahoga Falls City School Dist. Bd. of Edn.* (1990), 52 Ohio St.3d 222, 223, 556 N.E.2d 511, 513. R.C. 3319.081 applies to contracts with respect to nonteaching employees. The statute does not contain a provision authorizing a board of education to enter into supplemental contracts with nonteaching employees. In comparison, R.C. 3319.08 specifically authorizes a board of education to enter into supplemental contracts with teachers whereby a teacher receives additional compensation for additional duties performed. Clearly, if the General Assembly had intended to empower a board of education to enter into supplemental contracts with nonteaching employees, the General Assembly could have specifically so stated as it did with regard to teachers in R.C. 3319.08. Therefore, we find that a board of education does not have the authority to enter into supplemental contracts with nonteaching employees.

In the case at bar, the board unquestionably exceeded its authority when it issued the supplemental contracts to appellant. However, this case does not turn on whether the board had the power to enter into supplemental contracts. Rather, the dispositive issue here is whether the appellant had, in fact, been *promoted* from the position of custodian to head custodian.

Pursuant to the terms of the collective bargaining agreement between the board and OAPSE, the positions of custodian and head custodian are separate and distinct job classifications. The board and OAPSE agreed that head custodians would receive additional pay based upon a separate salary schedule and that head custodians would have separate job duties and responsibilities. The agreement is silent with regard to how long an employee can be temporarily classified as a head custodian. There is nothing in the agreement to indicate that the status of head custodian, once granted, is only a temporary position. The agreement clearly manifests the board's intention to delineate between the positions of custodian and head custodian.

At the hearing, appellant testified that he was initially hired by the board to act as custodian at Cortland and, later, his job title changed to that of head custodian. Appellant stated that as a result of becoming head custodian at Cortland, he assumed more responsibilities than those of custodian and, eventually, he received an increase in pay commensurate with his new job classification as set forth in the collective bargaining agreement. Appellant's testimony was corroborated by the fact that he was sent numerous "Notice[s] of Salary," pursuant to R.C. 3319.12, or 3319.12 and 3319.082, informing him that his rate of pay was for the job classification of "Head Custodian."

The equities in this case lean heavily in favor of appellant. Appellant's job title changed from that of custodian to head custodian. With the title change came more responsibilities and an increase in wages. Clearly, appellant was promoted to head custodian and granted continuing status in that job classification. The fact that the board labeled various contracts "supplemental," though it lacked authority to do so, does not negate the fact that the appellant was, or could be, for that matter, promoted to head custodian by the board. A board of education can, without question, promote nonteaching employees and grant those employees continuing status in the promoted classification.

Based on the foregoing, we find that the appellant was demoted without cause and without the procedural protections accorded to him under R.C. 3319.081(C). We further find that appellant's reduction in wages was not a part of a uniform plan affecting the nonteaching employees of the entire district. Therefore, the judgment of the court of appeals is reversed and it is ordered that appellant be returned to his position as head custodian under a continuing contract with all rights, privileges, benefits and wages appellant would have received had he not been unlawfully demoted.

*Judgment reversed*
*and order accordingly.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.