SNYDER, Appellant,

v.

SOUTHEASTERN LOCAL SCHOOL DISTRICT et al., Appellees.

[Cite as *Snyder v. Southeastern Local School Dist.,*
171 Ohio App.3d 544, 2007-Ohio-453.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 06CA2894.

Decided Jan. 29, 2007.

Thomas M. Spetnagel and Paige J. McMahon, for appellant.

McCaslin, Imbus & McCaslin, R. Gary Winters, and Ian R. Smith; John A. Podgurski, for appellees.

ABELE, Judge.

{¶ 1} This is an appeal from a Ross County Common Pleas Court summary judgment in favor of the Southeastern Local School District ("District") and the Southeastern Local School District Board of Education ("Board"), defendants below and appellees herein, on the claims brought against them by Orland Snyder, plaintiff below and appellant herein.

{¶ 2} Appellant assigns the following error for review:

The trial court erred in granting summary judgment in favor of defendants-appellees.

{¶ 3} The facts in this case are relatively undisputed. Appellant has been employed as a school bus driver for a number of years. On July 1, 2000, he entered into a contract to work as a building custodian, and he continued to work in that position under four successive one-year contracts. In July 2004, he learned that his contract would not be renewed.

{¶ 4} Appellant commenced the instant action and alleged that appellees had discharged him in violation of Ohio law and that in doing so, they violated an "implied covenant of good faith and fair dealing" and caused him "great emotional and physical distress." He requested compensatory damages, treble punitive damages, attorney fees, and costs. Appellees denied liability.

{¶ 5} Subsequently, appellees requested summary judgment. In particular, they argued that the contract with appellant was void because R.C. 3319.081 did not permit them to enter into multiple contracts with nonteaching employees. Appellant filed a memorandum contra and a motion for summary judgment. He argued that appellees had misinterpreted the law and that nothing prohibits the

district from employing him as both a bus driver and a custodian. He further argued that after the first year, his contract became a continuing contract for two years, which was terminated in the middle of the term without good cause and without notice.

{¶ 6} The trial court awarded appellees summary judgment and concluded that appellees had no authority under Ohio law to enter into multiple contracts with appellant. Thus, because the contract was invalid, no actionable breach occurred. This appeal followed.

I

{¶ 7} Before we review the merits of appellant's assignment of error, we address the standard of review. Summary judgments are reviewed de novo. *Broadnax v. Greene Credit Serv.* (1997), 118 Ohio App.3d 881, 887, 694 N.E.2d 167; *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327. In other words, appellate courts afford no deference to trial court decisions. *Hicks v. Leffler* (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786. Rather, appellate courts must conduct an independent review to determine whether summary judgment is appropriate. *Woods v. Dutta* (1997), 119 Ohio App.3d 228, 233–234, 695 N.E.2d 18; *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317.

{¶ 8} Summary judgment under Civ.R. 56(C) is appropriate when a movant can demonstrate that (1) there are no genuine issues of material fact, (2) the movant is entitled to judgment as a matter of law, and (3) after the evidence is construed most strongly in the nonmoving party's favor, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The party who requests summary judgment bears the initial burden to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once that burden is satisfied, the onus shifts to the nonmoving party to provide evidentiary materials in rebuttal. See *Trout v. Parker* (1991), 72 Ohio App.3d 720, 723, 595 N.E.2d 1015; *Campco Distributors, Inc. v. Fries* (1987), 42 Ohio App.3d 200, 201, 537 N.E.2d 661.

{¶ 9} In the case sub judice, we again note that the facts are undisputed. The point of contention appears to be the application of the law to those facts. Thus, this is a legal question that we review de novo. See *Woods v. Oak Hill*

*Community Med. Ctr.* (1999), 134 Ohio App.3d 261, 267, 730 N.E.2d 1037; *Shockey v. Fouty* (1995), 106 Ohio App.3d 420, 424, 666 N.E.2d 304, 306.

## II

{¶ 10} In his sole assignment of error, appellant asserts that the trial court erred by awarding appellees summary judgment. In particular, appellant contends that the court erred in determining that the district did not have the authority to enter into multiple contracts with appellant.

{¶ 11} Boards of education are creatures of statute and have no authority other than that conferred by statute. *Hall v. Lakeview Local School Dist. Bd. of Edn.* (1992), 63 Ohio St.3d 380, 383, 588 N.E.2d 785; *Verberg v. Cleveland School Dist. Bd. of Edn.* (1939), 135 Ohio St. 246, 14 O.O. 87, 20 N.E.2d 368, syllabus. R.C. 3319.081 speaks to employment contracts with nonteaching employees:

> Except as otherwise provided * * * the following employment contract system shall control for employees whose contracts of employment are not otherwise provided by law:

> (A) Newly hired regular nonteaching school employees, including regular hourly rate and per diem employees, shall enter into written contracts for their employment which shall be for a period of not more than one year. If such employees are rehired, their subsequent contract shall be for a period of two years.

> (B) After the termination of the two-year contract provided in division (A) of this section, if the contract of a nonteaching employee is renewed, the employee shall be continued in employment, and the salary provided in the contract may be increased but not reduced unless such reduction is a part of a uniform plan affecting the nonteaching employees of the entire district.

> (C) The contracts as provided for in this section may be terminated by a majority vote of the board of education. Except as provided in sections 3319.0810 and 3319.172 of the Revised Code, the contracts may be terminated only for violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance.

In *Hall*, supra, at the syllabus, the Ohio Supreme Court held that a board of education does not possess the authority under this statute to enter into "supplemental" contracts with nonteaching employees. In the case sub judice, both sides agree, and the trial court concluded, that the employment contracts at issue are not "supplemental," but should be characterized as "multiple" contracts. Thus, the dispositive question is whether the *Hall* rationale should be extended

from "supplemental" contracts to also include "multiple" contracts. Appellees argue, and the trial court agreed, that it should. Appellant, however, contends that it should not. After careful review of the pertinent authorities, we agree that the reasoning in *Hall* should apply and bar appellees from entering into "multiple" contracts with appellant.

{¶ 12} In *Hall,* the Ohio Supreme Court explicitly noted that the General Assembly gave boards of education the authority to enter into supplemental contracts with teaching employees. Had the legislature intended to allow supplemental contracts for nonteaching employees, it would have given boards the express authority to do so. We see no reason why the same principle should not apply to multiple contracts with nonteaching employees.

{¶ 13} Although neither party cites a statute that grants boards of education the authority to enter into multiple contracts with teaching employees (the existence of which would make this case more closely analogous to *Hall* ), we again point out that school boards may exercise only that authority granted under, and reasonably inferred from, the statute. Nothing in R.C. 3319.081, or apparently in any other statute, allows for multiple nonteaching contracts. If the Supreme Court concluded in *Hall* that express statutory authority must exist in order to enter into supplemental contracts, the same standard should apply to multiple contracts.

{¶ 14} Our colleagues in the Sixth Appellate District reached the same conclusion on this issue and reasoned that if "the General Assembly intended to empower the board of education to enter into multiple contracts with nonteaching employees, it would have so stated." See *Ohio Assn. of Pub. School Employees v. Anthony Wayne Local School Dist.* (Dec. 4, 1998), Lucas App. No. L–98–1114, 1998 WL 833572. The court illustrates some problems that could arise from such authority:

R.C. 3319.084, regarding vacation time for nonteaching employees, demonstrates that the General Assembly did not intend to permit boards of education to enter into more than one employment contract with nonteaching employees. That statute provides in part that "[e]mployees continuing in the employ of such board of education for ten or more years of service shall be entitled to vacation leave with full pay for a minimum of three calendar weeks * * *." The statute applies to "full-time non-teaching school employees" and defines such employees as persons who are in service for not less than eleven months in each calendar year. Under a two contract system, an employee could arguably be both qualified and not qualified at the same time for three weeks vacation with full pay. That is, a nonteaching employee could begin employment in 1990 under one contract which identifies her as full-time. However, because she is only assigned to work twenty hours per week, she enters into a

second contract in 1992 and is assigned to a different job in which she also works twenty hours per week. If she ultimately attains continuing contract status under both contracts, does her three week vacation benefit begin in 2000 or 2002? In the year 2000, she is clearly entitled to three weeks vacation under the first contract because she has been in that position for ten years. She is not, however, entitled to three weeks vacation under the second contract. This is but one example, but it confirms our conclusion that the Revised Code does not authorize a board of education to enter into multiple contracts with nonteaching employees.

{¶ 15} Appellant argues that this decision is flawed and contends that the court failed to account for the fact that the General Assembly used the word "contracts" (in the plural) in R.C. 3119.081, thus suggesting that the legislature intended to allow for "multiple positions under separate and independent contracts." We are not persuaded. We believe that the reason the statute uses the plural word "contracts" is because it also uses the plural word "employees." Because the statute talks about more than one nonteaching employee, it apparently refers to more than one contract.

{¶ 16} Appellant also contends that 1971 Ohio Atty.Gen.Ops. No. 71–021 supports the view that a nonteaching employee can be hired as both a school bus driver and a custodian. Again, we are not persuaded. While an attorney general's opinion is entitled to consideration, courts are not bound by those opinions. See *Slusher v. Scioto Cty. Sheriff* (Mar. 26, 1979), Scioto App. No. 1210. Moreover, in view of the fact that the opinion was rendered 35 years ago, and since that time the Ohio Supreme Court decided *Hall* and the Sixth District decided *Anthony Wayne*, we believe that the opinion has limited weight. We are, of course, bound by the *Hall* decision, and we find the Sixth District's extension of that reasoning more persuasive than the Ohio Attorney General's 1971 analysis.

{¶ 17} For these reasons, we find no error in the trial court's decision to award appellees summary judgment. Accordingly, we hereby overrule appellant's assignment of error and we hereby affirm the trial court's judgment.

Judgment affirmed.

KLINE, J., concurs.

McFARLAND, P.J., dissents.

McFARLAND, Presiding Judge, dissenting.

{¶ 18} I respectfully dissent. After close review, I conclude that the reasoning of *Anthony Wayne*, supra, is, in fact, consistent with the reasoning of the 1971

Attorney General opinion. Atty.Gen.Ops. No. 71–021 provides that "[a] noncerti-fied school employee may hold *a* continuing contract as both a custodian and a bus driver," as the dual responsibilities of a bus driver and a custodian are compatible. Thus, the attorney general seemed to be of the opinion that a nonteaching employee may hold these dual positions under a single, continuing contract. Likewise, the *Anthony Wayne* court ultimately held in favor of the appellant, a part-time custodian and part-time cook, and reversed the decision of the lower court, which had held that the board of education could nonrenew the appellant's contract covering the position of part-time cook. In so holding, the *Anthony Wayne* court implicitly held that the board of education had no authority to issue more than one contract to a nonteaching employee who holds more than one position and that when the employee received her contract for continuing employment, that contract covered both positions, and therefore she could not be removed from either position without just cause.

{¶ 19} In my view, the holding in *Anthony Wayne* and Atty.Gen.Ops. No. 71–021 are consistent in that they both determined that an individual, nonteaching employee may hold a single, continuing contract for dual positions that are compatible with one another. This view has also been discussed in Anderson's Ohio School Law Guide (2006), Section 8.03, which provides as follows:

> The employment of nonteaching personnel in local school districts would appear to create a general status governed by a single contractual relationship, regardless of the various duties assigned. Therefore (unlike teachers), non-teaching personnel in local districts may not be issued supplemental contracts. * * * As a corollary to this 'unitary employment' concept, it has likewise been held that there is no authority for local districts to employ nonteaching personnel under multiple 'prime' contracts for different duties.

{¶ 20} Accordingly, I believe that appellant possesses a protected interest in the form of a single, continuing contract, which encompasses his employment as both a bus driver and a custodian. Thus, I believe that the trial court erred in granting summary judgment in favor of appellees.